UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELANIE MERLE CONDE,

     Plaintiff,

v.                            Case No.:  2:23-cv-1135-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____

## OPINION AND ORDER

Plaintiff Melanie Merle Conde seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.[1]

---

[1] In the Reply Brief, Plaintiff argues that remand is required because the Commissioner cited *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), which was recently overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). Other than quoting *Loper* for the proposition that courts must exercise their independent judgment in deciding whether an agency acted within its statutory authority, Plaintiff simply raises the same issues as those in her initial brief regarding the persuasiveness of the medical providers' opinions and prior administrative findings. (Doc. 18, p. 1-4). Plaintiff does not identify any specific error of law in the ALJ's decision such that *Loper* is triggered.

### C.    Procedural History

Plaintiff applied for supplemental security income benefits on November 30, 2020, alleging disability beginning on November 1, 2020. (Tr. 66, 220-221). The application was denied initially and on reconsideration. (Tr. 66, 97). Plaintiff requested a hearing, and on February 7, 2023, a hearing was held before Administrative Law Judge Kim Griswold ("ALJ"). (Tr. 33-56). On July 6, 2023, the ALJ entered a decision finding Plaintiff not under a disability since November 30, 2020, the date the application was filed. (Tr. 17-28). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on October 18, 2023. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on December 5, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D.    Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2020, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and migraine headaches." (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember and carry out simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis. The claimant cannot perform externally paced conveyor belt work. The claimant cannot interact with the general public. The claimant can respond appropriately to occasional and superficial interaction with coworkers without teamwork or collaboration. The claimant can respond appropriately to supervisory directions and supervisory feedback for simple work-related matters. The claimant can adapt to simple and occasional change in the routine work setting. The claimant can make simple and occasional decisions in the routine work setting.

(Tr. 22).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a cashier, cleaner – commercial, or home attendant. (Tr. 26). At step five, the ALJ found that considering Plaintiff's age (25 years old on the date the application was filed), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Price Marker, DOT 209.587-034,[2] light, SVP 2

(2)   Collator Operator, DOT 208.685.010, light, SVP 2

(3)   Cleaner, DOT 323.687-014, light, SVP 2

(Tr. 27). The ALJ concluded that Plaintiff had not been under a disability since November 30, 2020, the date the application was filed. (Tr. 27).

## II.   Analysis

On appeal, Plaintiff raises the issue of whether the ALJ failed to properly evaluate the medical opinions and prior administrative medical findings under the revised regulations and whether the resulting RFC determination is unsupported by substantial evidence. (Doc. 12, p. 7). Plaintiff also argues that the ALJ substituted her lay opinion for that of the medical professionals. (Doc. 12, p. 23).

### A.   Medical Opinions

Plaintiff argues that the ALJ failed to properly evaluate medical opinions and prior administrative medical findings under the regulations. (Doc 12, p. 7). Plaintiff claims that the ALJ erred in assessing the opinions of State agency medical consultants E. Kamin, Ph.D. and L. Blackwell, Ph.D. as well as Plaintiff's treating mental health provider Jamie Carr, LMFT.[3] (Doc. 12, p. 8, 14).

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

[3] The initials after Jamie Carr's name, "LMFT," stand for Licensed Marriage and Family Therapist. At times in the decision, the ALJ incorrectly refers to Jamie Carr as "LMHC Carr." *See* Tr. 21, 24-25). This error does not affect the decision or the analysis here.

### 1.      Legal Standard

The same legal authority applies to these opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

2.    **The Opinions of E. Kamin, Ph.D. and L. Blackwell, Ph.D.**

Plaintiff argues that the ALJ found the opinions of both State agency medical consultants, Drs. Kamin and Blackwell, equally persuasive and therefore should have considered all the factors in the regulations when assessing their opinions. (Doc. 12, p. 9-11). Plaintiff also contends that it is unclear why the ALJ found these opinions even partially persuasive based on the ALJ finding them internally inconsistent, too vague to constitute an opinion, and inconsistent with treatment notes. (Doc 12, p. 11-12).

In the decision, the ALJ considered the opinions of Drs. Kamin and Blackwell:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: Reviewing DDS psychologists Dr. Kamin (4/2021) and Dr. Blackwell (9/2021) opined the claimant could perform unskilled work, but is moderately limited in maintaining concentration for extended periods, interacting with the public, getting along with coworkers without distractibility, accepting supervisory instruction, and responding appropriately to changes in the work setting (Exhibit 2A/12 & 3A/10-12). The undersigned is partially persuaded by these determinations because while restriction to simple work is supported, assessing moderate limitations without indicating specific/corresponding quantifiable restrictions is internally inconsistent. Especially the omission of social interaction and adaption limitations, while therapy records consistently document depressed and anxious mood/affect with generally fair insight, despite psychiatric medication prescriptions even after supplemental anti-depressant was added in March 2021 (Exhibit 3F/7, 5F/6/11 & 9F/11). Further social and adaptation restrictions are also supported by Nurse Barrett prescribing the claimant supplemental anti-depressant on June 2, 2022 (Exhibit 9F/7).

(Tr. 25).

In essence, the ALJ found the opinions of both Drs. Kamin and Blackwell persuasive as to the restriction to simple work, but not persuasive as to their findings of moderate limitations in other areas. (Tr. 25). The ALJ found these moderate limitations in other areas to have no specific or corresponding quantifiable restrictions, making them internally inconsistent. (Tr. 25). The ALJ then gave an example of Drs. Kamin and Blackwell finding moderate limitations in social interaction and adaption, but failing to include any corresponding, quantifiable restrictions in their narrative analysis. To remedy this failing, the ALJ included more limitations in the RFC, such as Plaintiff: cannot interact with the general public; can respond appropriately to occasional and superficial interaction with coworkers without teamwork or collaboration; can respond appropriately to supervisory directions and supervisory feedback for simple work related matters; can adapt to simple and occasional changes in the routine work setting; and can make simple and occasional decisions in the routine work setting. (Tr. 25).

While Plaintiff does not dispute that the record supports greater limitations than assessed by Drs. Kamin and Blackwell, Plaintiff argues that the ALJ did not explain why their opinions about simple work are supported. (Doc. 12, p. 9). Even though the ALJ's statement may appear conclusory, earlier in the decision, the ALJ clarified why a restriction to simple work is supported by the record and consistent with the medical evidence. As to simple work, the ALJ found:

> Restriction to simple work, with simple and occasional routine work changes or decision making is supported by the fact that the claimant completed a GED program around July 2021, despite her reports of anxious/depressed mood and feeling overwhelmed with raising two young children under the age of 5 (Exhibit 5F/6 & Testimony). This restriction is also supported by expert opinions from Dr. Kamin (4/2021) and Dr. Blackwell (9/2021) restricting the claimant to simple and routine work and assessing a moderate limitation in responding appropriately to changes in the work setting (Exhibit 2A/8-10 & 3A/9-11). Moreover, such restriction is also supported by the claimant's reports of chronic migraine headaches accompanied by light and noise sensitivity, treated with preventative Diltiazem (Exhibit 7F/10).

(Tr. 25). In brief, the ALJ found a restriction to simple work supported by the findings of Drs. Kamin and Blackwell and consistent with Plaintiff obtaining a GED during the relevant time. The ALJ complied with the regulations.

Plaintiff next argues that the ALJ failed to acknowledge that the findings of Drs. Kamin and Blackwell differed, yet she found both of their opinions partially persuasive. (Doc. 12, p. 9-11). Plaintiff contends that by finding both of their opinions partially persuasive, the regulations require the ALJ to consider, not only the supportability and consistency of these opinions, but also consider the remaining regulatory factors. (Doc. 12, p. 9-10). This argument fails.

While both Drs. Kamin and Blackwell agreed that Plaintiff was moderately limited in some areas, they did not agree as to others. (Tr. 74-77, 89-92). Just before making these findings, both Mental RFC assessments begin by stating, "[t]he questions below [which include the moderate or not significantly limiting findings]

help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 73, 89); *see Rae v. Saul*, No. 8:19-cv-2987-T-TGW, 2021 WL 211269, at *3 (M.D. Fla. Jan. 21, 2021) (citing *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012)) (the plaintiff . . . fails to recognize the entirety of the reviewers' opinions contained in the MRFC. Thus, the reviewers' limitations ratings are followed by "the actual mental residual functional capacity assessment, [which] is recorded in the narrative discussion(s)."). Dr. Kamin found in the narrative portion, "The claimant is limited to the basic mental demands of competitive, remunerative, unskilled work including the ability to: understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (Tr. 78). Dr. Blackwell found in the narrative portion, "The claimant retains the capacity to perform the basic mental demands of unskilled work." (Tr. 93). As the ALJ found, both opinions find Plaintiff limited to unskilled work and are not in conflict such that the ALJ was required to consider factors other than supportability or consistency.

Finally, Plaintiff argues that in applying the consistency factors, it is unclear why the ALJ found the opinions of either Dr. Kamin or Dr. Blackwell even partially

persuasive. (Doc. 12, p. 11). Plaintiff argues that the ALJ found their findings were internally inconsistent, too vague to constitute an opinion, and inconsistent with the treatment notes. (Doc. 12, p. 11). The ALJ found these two opinions consistent with a restriction to simple work. Otherwise, the ALJ found these opinions inconsistent in finding moderate limitations in other areas yet not including limitations in the narrative portion of their opinions. There is no error.

### 3.    The Opinion of Jamie Carr, LMFT

Plaintiff argues that the ALJ's reasoning for finding LMFT Carr's opinions unpersuasive is not supported by her records and inconsistent with the ALJ's other findings. (Doc. 12, p. 12-13). Plaintiff claims that the ALJ failed to account for the frequency of Plaintiff's anxiety or depressed moods. (Doc. 12, p. 13).

In the decision, the ALJ discussed therapy notes from LMFT Carr and psychiatric prescriber Nurse Zimmerman from November 2020 to July 2021, which showed Plaintiff regularly reported low energy, poor sleep based on ruminative thoughts and feelings, and being overwhelmed raising her daughters alone. (Tr. 24). At the same time, the ALJ also noted that the mental status exams conducted by LMFT Carr consistently showed intact recent and remote memory, average intelligence, intact judgment, full orientation, at least fair concentration, and cooperative demeanor even when exhibiting anxiety or depression. (Tr. 24). The ALJ noted that later in April 2021, LMFT Carr found Plaintiff had an unhelpful

thinking style, anxious/depressed mood, difficulty attending appointments, and social withdrawal. (Tr. 24). But LMFT Carr also documented Plaintiff's strengths of being thoughtful, caring, resilient, and engaged in care. (Tr. 24). The ALJ noted that in July 2021, LMFT Carr documented that after starting Cymbalta and discontinuing Gabapentin, Plaintiff reported improved energy, anxiety, and ability to block out unhelpful thoughts. (Tr. 24). The ALJ then mentioned that after the July 2021 appointment, Plaintiff did not seek mental health treatment for nearly a year until June 2022 and had stopped taking her medications. (Tr. 24).

The ALJ considered LMFT Carr's opinions in determining that Plaintiff can respond appropriately to supervisory directions and feedback for simple work-related matters and occasional or superficial interaction with coworkers not entailing teamwork or collaboration. (Tr. 25). The ALJ found LMFT Carr's exams of Plaintiff showed fair insight, with intact judgment and impulse control as well as a cooperative demeanor even when she exhibited an anxious or depressed mood. (Tr. 25).

As to LMFT Carr's Employability Assessments from December 11, 2019 through July 31, 2021, the ALJ found:

> Employability Assessments from LMHC Carr (12/11/2013 & 7/21/2021) opined the claimant has moderate limitation in understanding, remembering and applying simple instructions, but at least marked limits in responding appropriately to coworkers/supervisors, maintaining attention and concentration, adhering to a regular schedule and dealing with

work stressors. In coming to such assessment, LMHC Carr pointed to the claimant's subjective reports of depressive, anxiety and trauma related symptoms (Exhibit 8F). The undersigned is not persuaded by these assessments because they are inconsistent with LMHC Carr's own mental status findings primarily showing cooperative and pleasant demeanor even when she exhibits anxious or depressed mood. LMHC Carr's mental status exams also consistently document intact cognition/memory/judgment, and at least fair concentration, with good impulse control (Exhibit 5F/5-6/15-16). To that end, such restricted function is not supported by Nurse Barrett's mental status findings (6/2022) of cooperative, calm, and pleasant demeanor with intact cognition, intelligence, and memory after 6 months without psychiatric medications. However, Nurse Barrett also documented that the claimant exhibited sad, irritable, and anxious mood/affect (Exhibit 6F/7-11).

(Tr. 26).

In short, the ALJ found LMFT Carr's assessment that Plaintiff had marked limitations in responding appropriately to coworkers and supervisors, maintaining attention and concentrations, adhering to a regular schedule, and dealing with work stressors unpersuasive. (Tr. 26). The ALJ reasoned that LMFT Carr's own mental status exams did not support these marked or extreme limitations. The ALJ noted that LMFT Carr found Plaintiff was cooperative and had a pleasant demeanor even when she was anxious or had a depressed mood. (Tr. 26). The ALJ further found these mental status exams consistently documented an intact cognition, memory, and judgment, as well as at least fair concentration, with good impulse control. (Tr. 26). As the ALJ found, these mental status exams do not support LMFT Carr's assessment.

The ALJ also found that LMFT Carr's assessments as to marked or extreme limitations was inconsistent with a June 2022 mental status exam done by Maryann Barrett, PMHNP.[4] (Tr. 26). At this mental status exam, Nurse Barrett found Plaintiff cooperative, calm, pleasant with intact cognition, intelligence, and memory after six months without psychiatric medications. (Tr. 26, 755). At the same time, the ALJ also noted Nurse Barrett documented that Plaintiff exhibited sad, irritable, and anxious mood and affect. (Tr. 26).

In the end, the ALJ considered LMFT Carr's treatment records and acknowledged both the normal and abnormal findings. The ALJ found LMFT Carr's marked or extreme limitations unsupported by her own treatment records and inconsistent with Nurse Barrett's mental status exam. In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The ALJ need not refer to every piece of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

---

[4] "PMHNP" stands for Psychiatric-Mental Health Nurse Practitioner.

Taking the record as a whole, substantial evidence supports the ALJ's findings and the ALJ did not err in determining the persuasiveness of LMFT Carr's opinions.

### B.   Substitution of Opinion

Plaintiff argues that the ALJ improperly relied on her own lay opinion instead of the opinions of medical professionals. (Doc. 12, p. 23). Plaintiff claims that the ALJ "cherry-picked" findings to support the RFC assessment. (Doc. 12, p. 23). Plaintiff contends that even though the ALJ assessed greater limitations than Drs. Kamin and Blackwell found based on LMFT Carr's treatment notes, she did not credit LMFT Carr's opinion that found even greater limitations. (Doc. 12, p. 23). Instead, Plaintiff claims that the ALJ interpreted the treatment notes herself and assessed the RFC based on her own lay opinion.

At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014), *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007). That said, an ALJ may not "'may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.'" *Williams v. Barnhart*, 140 F. App'x 932, 934 (11th Cir. 2005) (quoting *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir.1992)). But an ALJ can reject a physician's opinion when the evidence supports a contrary conclusion. *Id.* Indeed, while an ALJ may not

make medical findings, an ALJ has the responsibility to resolve conflicting medical opinions. *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016).

Here, substantial evidence supports the ALJ's RFC assessment that Plaintiff can perform work at all exertional levels with non-exertional limitations. (Tr. 22). In making this determination, the ALJ considered the treatment records of LMFT Carr, as well as the other medical providers' records, and properly assessed LMFT Carr's opinions as unpersuasive. The ALJ also assessed the opinions of Drs. Kamin and Blackwell properly when finding these opinions partially persuasive, and assessed a more limited RFC then recommended by these State agency consultative medical examiners. The ALJ did not substitute her opinion for that of the medical expert by discounting portions of the medical providers' opinion or the State agency medical consultants' opinions. *See Perez v. Comm'r of Soc. Sec.*, No. 23-13018, 2024 WL 3292612, at *2 (11th Cir. July 3, 2024) (finding that when an ALJ considers the treatment records and administrative medical findings and properly evaluates them, then the ALJ did not substitute her opinion for that of the medical experts.). Remand is not warranted on this issue.

## III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on October 28, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties